UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS



FILED

NOV 0 1 2019

Clerk, U.S. District Court
Texas Eastern

| CRAIG CUNNINGHAM, Plaintiff, v. The Wilhelm Law Group, LLC, John J Wilhelm, Secure Account Service, LLC, Consumer Defense Group, LLC, United Financial Protection, LLC, John/Jane Does 1-5 *Thomas Sizemore, Levon Sizemore* Defendant | § § § § § § § § § § § | 4:19-cv-00493-ALM-CAN |
|---|---|---|

Plaintiff's Amended Complaint *and Jury Demand*

**Parties**

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. The Wilhelm Law Group, LLC is a natural person and can be served at 320 N. Atlantic Ave 5B, Coca Beach, FL 32931 or 655 Carambola Dr., Merritt Island, FL 32952 via registered agent John J. Wilhelm.

3. John J. Wilhelm is a natural person and can be served at 320 N. Atlantic Ave 5B, Coca Beach, FL 32931 or 655 Carambola Dr., Merritt Island, FL 32952

4. Consumer Defense Group, LLC is a Florida corporation that can be served via registered agent Alex Morales 6996 Piazza Grande Ave., ste 211, Orlando, FL 32835.

5. Secure Account Service, LLC is an Arizona corporation that can be served via

registered agent Stephen Stratford at 430 S. Lake Havasu Ave., ste 101, Lake Havasu City, AZ 86403.

6. United Financial Protection, LLC is a Florida corporation that can be served via registered agent Thomas Sizemore at 43436 Dixie Dr., Paisley, FL 32767

7. Thomas Sizemore is a natural person who can be served at 43436 Dixie Dr.,

8. Levon Sizemore is a natural person and can be served at 5080 N. Kaliga Dr. Saint Cloud Fl 34771.

9. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

## JURISDICTION AND VENUE

10. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

11. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and the sell goods and services to Texas residents, including the Plaintiff.

12. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of the defendants.

13. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. residing in the Eastern District of Texas when he recieved a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

14. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

15. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

16. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

17. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

18. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

19. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

20. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

21. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

22. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

23. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

24. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

25. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

26. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

27. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the

TCPA would lose much of its force.").

## The Texas Business and Commerce Code 305.053

28. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

29. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## FACTUAL ALLEGATIONS

30. Rachel with Card Services is the bane of the existance of many consumers. These are calls long since prosecuted by the FTC that make fraudulent, misleading, false promises and exaggerated claims to consumers. These scams have taken place for years and continue to this day.

### Alleged calls to the Plaintiff and violations of 47 USC 227(b)

31. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of each of the defendants in this case offering their products/services as a result of the calls. The calls had a delay of 3-4 seconds of dead air before the pre-recorded message began indicating the calls were initiated using an ATDS. The Plaintiff recieved calls selling the services of Wilhelm Law Group, John Wilhelm, Secure Account Services, and Consumer Defense Group by United Financial Protection, LLC as directed by Thomas Sizemore and Levon Sizemore and there are elements of both direct and vicarious liability in this case.

32. The Plaintiff recieved multiple calls from multiple spoofed and non-working caller

ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's that include the first 6 digits of the Plaintiff's phone number at issue also known as local area spoofing. These calls were not related to an emergency purpose and were placed without the Plaintiff's consent.

33. One call was from 615-550-8333 to 615-348-1977 on 11/12/2018 and contained a pre-recorded message and was initiated by an automated telephone dialing as indicated by a 3-4 second delay of dead air when the call first connected. The defendants called a total of 10 times on 11/12/2018, 3 times on 11/13/2018 and once on 11/15/201 from 866-576-9211.

34. The 8333 number is a non-working number and was picked specifically because it is very similar to the Plaintiff's actual phone number of 7262 and is called "Neighborhood spoofing" designed to trick consumers into picking up the call as it appears to be a local call. This call contained a pre-recorded message after a 3-4 second pause of dead air. Upon further conversation with the representative who had a thick foreign accent and sounded as if he was calling from overseas, the Plaintiff was transferred live to a "verification" rep and then finally to an agent who stated he was with Consumer Defense Group.

35. The Defendants knew full well that overseas telemarketers were placing calls on their behalf to consumers across the country pitching debt relief services by overseas telemarketers which was initiated using an automated telephone dialing system and contained a pre-recorded message.

36. Mr. Cunningham has a limited data plan. Incoming text messages chip away at his monthly allotment.

37. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming calls from the defendants consumed part of this capacity.

38. No emergency necessitated the calls

39. Each call was sent by an ATDS.

**Knowing and Willful Violations of Telemarketing Regulations** 47 USC 227(c)(5)

40. Mr. Cunningham asked for an internal do-not-call policy

41. The Defendants knowingly violated the TCPA by initiating automated calls with pre-recorded messages to the Plaintiff without maintaining an internal do not call policy in violation of 47 CFR 64.1200(d).

42. The Defendants never sent Mr. Cunningham any do-not-call policy in violation of 47 CFR 64.1200(d)(1)

43. The Defendants placed telemarketing calls without having a written do-not-call policy in place to Mr. Cunningham in violation of 47 CFR 64.1200(d)(1)

44. The Defendants placed telemarketing calls to the Plaintiff without training their agents engaged in telemarketing on the existence and use of any do-not-call list in violation of 47 CFR 64.1200(d)(2)

45. The defendants placed telemarketing calls without identifying themselves or the party they were calling on behalf of and falsely claimed they were with Visa or Mastercard in violation of 47 CFR 64.1200(d)(4)

**John Wilhelm's Control over the telemarketing calls Robocalling and Telemarketing**

46. At all times relevant to the claims alleged herein, John Wilhelm was the sole corporate officer and executive in charge Wilhelm Law Group, LLC.. Each and every

call was placed on behalf of the corporate entites owned by John Wilhelm.

47. John Wilhelm is Wilhelm Law Group LLC's, incorporator, registered agent and solecorporate officer.

48. John Wilhelm was aware that calls were being placed by or on behalf of his company, via automated, telemarketing calls en masse to people, including Plaintiff.

49. As Wilhelm Law Group LLC's senior-most executive, John Wilhelm had the power to stop these spam campaigns.

50. As Wilhelm Law Group LLC's , senior-most executive, John Wilhelm had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

51. John Wilhem signed a contract with Consumer Defense Group and Secure Account Services in order to solicit his legal services as part of the telemarketing campaign.

52. John Wilhelm directed United Financial Protection, LLC to place calls to consumers across the country, including Texas.

53. Instead, John Wilhelm allowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

### Thomas and Levon Sizemore's control over the telemarketing calls

54. At all times relevant to the claims alleged herein, Thomas Sizemore and Levon Sizemore were the corporate officers and executives in charge United Financial Protection, LLC. Each and every call was placed by United Financial Protection, LLC

55. Levon and Thomas Sizemore were aware that calls were being placed by or on behalf of his company, via automated, telemarketing calls en masse to people, including

Plaintiff.

56. As the senior-most executives, Levon and Thomas Sizemore had the power to stop these spam campaigns.

57. As the senior-most executives, Levon and Thomas Sizemore had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

58. The senior-most executives, Levon and Thomas Sizemore signed a contract with Consumer Defense Group and Secure Account Services in order to make illegal telemarketing calls.

59. The senior-most executives, Levon and Thomas Sizemore directed United Financial Protection, LLC to place calls to consumers across the country, including Texas.

### The Plaintiff's cell phone is a residential number

60. The calls were to the Plaintiff's cellular phone 615-331-7262, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### The Plaintiff's cell phone has been on the Federal Do Not Call List since 2018

61. The calls to the Plaintiff's cellular phone 615-331-7262 were placed in violation of 47

USC 227(c)(5) as the Plaintiff has placed his phone number on the National Do Not call list since 2018.

### Violations of the Texas Business and Commerce Code 305.053

62. The actions of John Wilhelm and her corporation violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by John Wilhelm and her corporation violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

63. The calls by John Wilhelm violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### I.   FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.    Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.    Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.    Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a.    a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

    b.    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

   c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47

---

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation.**Texas Business and Commerce Code 305.053(b)**

14. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against the Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 30 calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

G. An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law and equity

H. Such further relief as the Court deems necessary, just, and proper.

*Craig Cunningham*
Plaintiff,                    11/1/2019

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| **CRAIG CUNNINGHAM,** **Plaintiff,** v. The Wilhelm Law Group, LLC, John J Wilhelm, Secure Account Service, LLC, Consumer Defense Group, LLC, United Financial Protection, LLC, John/Jane Does 1-5 **Defendant** | § § § § § 4:19-cv-00493-ALM-CAN § § § § |

**Plaintiff's Certificate of Service**

I hereby certify a true copy of the foregoing was mailed to the attorney of record for the defendants and emailed on 11/1/2019

*Craig Cunningham*
Plaintiff,                    11/1/2019

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075